## In re CANTON IRON & STEEL CO.

### In re FREEDMAN.

(District Court, D. Maryland. June 10, 1912.)

1. BANKRUPTCY (§ 340*)—CLAIMS—IDENTITY OF DEBTOR—EVIDENCE—SUFFICIENCY.

On a claim against the estate of a bankrupt for the price of merchandise, evidence *held* to show that credit was extended to an allied corporation, and not to the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

2. BANKRUPTCY (§ 342½*)—CLAIMS—OBJECTIONS.

Where it appears that a claim against the bankrupt's estate has been properly disallowed on objections made and conducted by the creditors in their own names, who voluntarily assumed liability for costs and expenses, the order of disallowance will not be disturbed on a theory that the trustee was the only proper person to attack the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. § 342½.*]

3. BANKRUPTCY (§ 342½*)—CLAIMS—OBJECTIONS—IRREGULARITIES.

An order disallowing a claim against a bankrupt's estate on objections by creditors after the claim had been allowed will not be disturbed on a theory that a petition for reconsideration and disallowance of the claim should have been filed, where the creditors' objections were given the effect of such petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530½; Dec. Dig. § 342½.*]

In the matter of the Canton Iron & Steel Company, bankrupt. On review of an order of the referee disallowing the claim of Joseph Freedman. Affirmed.

Daniel S. Sullivan, for Joseph Freedman.

Bartlett, Poe, Claggett & Bland, for Hudson Trust Co. and John B. Casey.

ROSE, District Judge.   [1] Joseph Freedman says the bankrupt owes him $7,632.53 for merchandise sold and delivered to it.   He will be called the claimant.   Certain large creditors of the bankrupt deny that it owes him anything.   They contend that he sold the merchandise in question to another corporation, the Iron & Steel Products Company, and that it and not the bankrupt is his debtor therefor. For brevity it will be called the "Products Company."   Prior to the spring or early summer of 1909 the bankrupt was in no wise connected with the Products Company.   The latter was first formed about that time for the purpose of acquiring the capital stock of corporations engaged in such business as that which the bankrupt was then carrying on.   It became the holder of all the capital stock of the bankrupt and of four other companies.   It planned that its officers or agents should buy the raw material for the plants of its subsidiary companies, that all their bookkeeping should be done by it at its central offices, and that all payments for goods used by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any of them should be made by it. In short, that it, and not they, should deal with the outside public. What it thus undertook to do it in large part did. In practice it was found that in some instances the mill managers could buy to better advantage than could the central office. The bankrupt had been in business for several years. It had a more or less well-established credit. Some concerns which had been in the habit of selling it in the days of its independent existence continued to ship goods to it after its stock had become the property of the Products Company. Sometimes these supplies were ordered by the mill manager of the bankrupt who was the same man who had given the orders before the Products Company was formed. Sometimes these orders came from the latter company. To some persons payments were made either occasionally or habitually from the bankrupt's office. In most instances the bills were paid by the Products Company. The latter's span of life was of the shortest. Within 10 months after it began business it was hopelessly insolvent and in receiver's hands. Its fall carried the subsidiary companies down with it. For the first time perhaps some of the concerns which were certainly creditors of it or of one of them began to wonder which was their debtor. It was some time before they could make up their minds. The trustee of the bankrupt and the receivers of the Products Company were in litigation. The winner would pay its creditors a larger dividend than the loser could. The claimant, as well as others, was frankly anxious to know what the outcome of the legal controversy would be. His letters in the record show that he wanted to make his claim against the company which would pay the most. In the end the substantial victory was with the trustee in bankruptcy. Before that result became probable, the year after adjudication in which creditors are required to prove their claims had well-nigh expired. Only a few days remained. The claimant's proof was tendered on the 20th of May, 1911. The adjudication had taken place May 24, 1910.

The referee held that the claimant had given credit to the products Company, and not to the bankrupt. In consequence he disallowed the claim. The claimant filed his petition for review. He says that his proof of claim was in proper form. The claim itself had once been allowed. He invokes the rule that such proof is in itself prima facie evidence that the claim is due and owing. The burden of showing that it is not is thrown upon him who would question it. In this case it is not necessary to consider how far that rule goes, and to what limitations or qualifications, if any, it is subject. The claimant has been fully examined both on his own behalf and on that of the objecting creditors. He has told his story as he would now like to tell it. From his own evidence, and that supplied by contemporaneous documents, it is difficult to see how the referee could have come to any other conclusion than he did. The idea of holding the bankrupt was obviously an afterthought on the part of the claimant. Much that the claimant did both before the collapse of the two companies and after was utterly inconsistent with any purpose to claim that any one other than the Products Company was his debtor. The excepting creditors have abundantly sustained any burden of proof which rests upon them.

What has been said disposes of the merits of the real controversy between the parties. Some technical questions have, however, been raised, and must be dealt with.

[2] The claimant says that after the trustee has been elected and has qualified he is the proper person, and the only proper person, to dispute the validity of claims made against the estate. If this contention be correct, it still remains true that upon applications of creditors the court will in a proper case instruct the trustee to contest what appear to be doubtful claims, provided the objecting creditors will indemnify the estate against the cost of so doing. In this case the creditors by making their objections and conducting the controversy in their own names voluntarily assumed liability for costs and expenses. Now that the case has been fully presented, to ignore all that had been done, and to instruct the trustee to begin the litigation over again, would be to carry respect for technical regularity too far. It would be wasting both time and money.

[3] Similar reasons require the overruling of the remaining objection of the claimant to the referee's findings. He says that the attack on his claim was not made in the proper time or in the proper manner. The referee stated a first distribution account, by which he allotted a dividend to all the creditors whose claims had been proved and allowed. Among these claims was that of the claimant. Creditors then excepted to the allowance of a large number of such claims, among them that of the claimant. The latter says that the proper course would have been to have filed a petition with the referee for the reconsideration and disallowance of his claim. In that he is right, although the practice in this district until recently has been to bring up such questions in the manner in which they have been here raised. The irregularity has done the claimant no harm. The exceptions of the creditors have been, in fact, treated precisely as if they had been a petition for the reconsideration of the allowance of the claim. The so-called exceptions have been heard by the referee as he would have heard the petition for reconsideration. His action thereon has been brought here for review as it would have been had he passed upon the petition instead of upon the exceptions. If there has been error, there has been no injury. The attack upon the claim has been made in time. The estate is not yet closed.

It follows that the action of the referee in disallowing the claim was right, and must be affirmed.